# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TERRIE VAVREK, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | )    CAUSE NO.: 3:14-CV-1903-TLS |
| | ) |
| INTERNATIONAL UNION, UNITED | ) |
| AUTOMOBILE, AEROSPACE and | ) |
| AGRICULTURAL IMPLEMENT | ) |
| WORKERS OF AMERICA, and | ) |
| UAW LOCAL #5, | ) |
| | ) |
|     Defendants. | ) |

# OPINION AND ORDER

The eighteen Plaintiffs in this case are suing their recognized collective bargaining representatives (collectively referred to as "the Defendants" or "the Union") for breaching their duty of fair representation. Count I is based on the Defendants' failure to fairly represent the Plaintiffs during the negotiation of an April 2011 collective bargaining agreement. Count II alleges that the Defendants breached the duty of fair representation when they made false statements of fact to the Plaintiffs regarding the status of their internal union appeals. The Defendants have moved for summary judgment. They argue that the Plaintiffs' claims are barred by the applicable six-month statute of limitations. The Plaintiffs disagree, contending that various tolling principles have rendered their claims timely.

For the reasons stated in this Opinion and Order, the Court finds that the Plaintiffs' claims are barred by the statute of limitations, and therefore grants the Defendants' Motion for Summary Judgment [ECF No. 36].

# STATEMENT OF FACTS

**A.     Background**

The Plaintiffs work at AM General's Commercial Assembly Plant in Mishawaka, Indiana. At all relevant times, the Defendants have been the recognized collective bargaining representative for the bargaining unit of employees at the Commercial Assembly Plant, which includes the Plaintiffs. In 2008, AM General laid off the majority of the Commercial Assembly Plant workforce, including the Plaintiffs, due to lack of production orders for the commercial Hummer produced at the facility.

In April 2011, the Defendants negotiated a six-year collective bargaining agreement (CBA) with AM General for the Commercial Assembly Plant. During negotiations, the Plant had a contract for production of the MV-1 prototype taxis and was looking to expand that work. AM General demanded overall concessions on wages and benefits, which it asserted were necessary to retain the existing MV-1 taxi contract and to attract new commercial contracts. The parties agreed to a two-tier wage and benefit package. It provided reduced benefits for new hires and employees who had been laid off, including the Plaintiffs, while providing higher wages and other additional benefits to a designated group of employees AM General had selected for inclusion in an MV-1 Pre-Launch Group based on their seniority and skills. The 2011–2017 CBA, which governs the terms and conditions of employment for all members of the Commercial Assembly Plant bargaining unit, including the Plaintiffs, was ratified and took effect on April 18, 2011.

The Plaintiffs returned from layoff in August 2011, and learned that the 2011–2017 CBA had been signed and that they were not included in the MV-1 Pre-Launch Group.

2

According to the Plaintiffs, several of them sought to file grievances to challenge the Defendants' actions. Plaintiffs Terrie Vavrek, Dennis Whittaker, Glenda Scruggs, Ann Geiger, Linda Ragsdale, and Melissa Dailey each attempted to file an appeal to the Local 5 membership. Union officials, including Bruce Schweizer and Frank Bonk, told the Plaintiffs that an appeal had already been filed on their behalf; that they were waiting for a decision; that their grievance had been appealed to the International Union, and; that the appeal procedure had been exhausted and there was nothing further the Union could do. In a union meeting which Plaintiff Tibbs and her husband attended between August 2011 and December 2011, Schweizer told the union body that the grievance had been sent to the International Amalgamated committee in Detroit, Michigan. Schweizer said the grievance had been reviewed and the Union had concluded that the vote on the contract should not be handled in the same way again. The Plaintiffs believed that all internal union remedies had been exhausted.

According to the Defendants, none of the Plaintiffs actually filed an appeal with the Local 5 membership, or through the next steps of the UAW appeal process. Under Article 33 of the UAW Constitution, a UAW member has the right, at a membership meeting, to challenge the actions of the local union, or its officials, in a wide range of areas including negotiations and grievance handling. A member has sixty days to initiate an appeal to the membership. The time for filing an appeal under the UAW Constitution begins to run when "the appellant first becomes aware, or reasonably should have become aware, of the alleged action or decision appealed." (Isaacson Aff., Exs. 1 & 2, Art. 33, §4(b).) If the local union membership rejects this challenge, or does not act, the member has the right to appeal within thirty days to the International Executive Board. This appeal may result in a hearing, at which the member has the right to

produce evidence and submit a brief. If the member is dissatisfied with the decision of the International Executive Board, he has thirty days to appeal to either the Public Review Board, which is established under Article 32 of the UAW Constitution, or the Convention Appeals Committee under Article 33 of the UAW Constitution.

B.      The December 2011 Litigation

The Plaintiffs, believing that they had exhausted their internal administrative remedies, filed suit against the Defendants on December 27, 2011, alleging unfair representation, in Cause No. 3:11-CV-498-WCL-CAN (the "2011 Lawsuit"). The Plaintiffs asserted that, during the negotiations for the 2011–2017 CBA, the Defendants failed to fairly represent the Plaintiffs when they negotiated favorable treatment with respect to wages and benefits for other employees. According to the complaint allegations, the Plaintiffs did not receive the same favorable terms and compensation levels as these other employees, even though they share similar seniority, skills, and responsibilities.

The Defendants answered the complaint and asserted, as an affirmative defense, that the Plaintiffs' claim was barred because they failed to exhaust Union remedies prior to filing the lawsuit. In February 2013, the Defendants advanced these arguments as a basis for summary judgment. They argued that it was undisputed that the Plaintiff failed to exhaust remedies under the UAW Constitution, and asserted that they were entitled to summary judgment because the internal Union remedies could have resulted in complete relief for the Plaintiffs in the form of monetary damages. In response to the motion for summary judgment, the Plaintiffs requested additional time to pursue administrative appeals of their original claims of unfair representation

4

regarding the contract negotiations, and to also pursue appeals regarding misrepresentations they alleged the Unions made to them regarding the status of their appeals. Specifically, several of the Plaintiffs presented evidence that union officials made statements that caused them to believe that all internal union remedies had been exhausted. The Plaintiffs also requested to have the matter stayed or dismissed without prejudice to allow the Plaintiffs to exhaust these appeals.

The Plaintiffs filed union appeals on April 8, 9, and 11, 2013, attempting to cure any non-compliance with internal exhaustion requirements. Two sets of appeals were filed, with the first challenging whether the Defendants fairly represented the Plaintiffs when they negotiated different wages and benefits for the MV-1 Pre-Launch Group. In the second set of UAW Constitution appeals, the Plaintiffs asserted that the Defendants misrepresented the status of appeals to challenge the CBA negotiations.

Meanwhile, the Defendants objected to the Plaintiffs' request for an extension or stay of the 2011 Lawsuit to pursue administrative appeals. They argued that their summary judgment request was premised on the Plaintiffs' failure to exhaust their internal Union appeals prior to bringing the 2011 Lawsuit, and that the filing of internal appeals in April 2013 could not cure Plaintiffs' failure to exhaust their internal appeals prior to filing the 2011 Lawsuit. The Plaintiffs countered that their internal appeals could render the Defendants' summary judgment motion moot. They asked the court to grant the extension or, alternatively, dismiss the 2011 Lawsuit without prejudice or stay the litigation to facilitate the internal appeal process. The Plaintiffs noted that the UAW Constitution permitted the President to waive the time for filing the appeal if warranted by the circumstances.

The Plaintiffs were denied an extension of time to respond to the Defendants' motion for

summary judgment and, on August 13, 2013, the court granted summary judgment in favor of the Defendants because the Plaintiffs had not exhausted administrative remedies. The court decided not to excuse the Plaintiffs' failure to exhaust internal union appeals, reasoning that the Plaintiffs should have made themselves aware of the nature and availability of union remedies despite assurances by Union representatives that a grievance was already in the appeals process and nothing more could be done, and that some of the relief the Plaintiffs sought could have been obtained through the internal appeals process. *Vavrek v. UAW*, 2013 WL 4090931, at *4–5, Cause No. 3:11-CV-498-WCL-CAN (N.D. Ind. Aug. 13, 2013).

The court further held that a stay was not appropriate to wait for the outcome of pending grievances because the law required exhaustion prior to filing suit. The Plaintiffs were still processing their appeals through the UAW channels when summary judgment was granted.

The Plaintiffs did not appeal the judgment against them.

C. **The Internal Appeals Process**

The Plaintiffs' April 2013 Local 5 membership appeals, and the Union's response were read in full at the next regularly scheduled general membership meetings on May 2, 2013, at 10:00 a.m. and 6:00 p.m. The Union denied both sets of appeals on the following grounds: (1) they were not properly submitted pursuant to Article 33, Section 3(b) of the UAW Constitution; (2) they were untimely under Article 33, Sections 4(b) and 4(c) because they were not filed until April 2013 even though they challenged or protested conduct that allegedly occurred in 2011; and (3) they had no substantive merit.

The Plaintiffs maintain that they did not receive any written response to their appeals

6

until August 29, 2013, after they requested a status. It was then that the Plaintiffs learned that their appeals had been heard in May 2013, and that no further action had been taken on the appeals.

On September 24, 2013, the Plaintiffs, through counsel, appealed the denial of their appeals to the International Executive Board. These appeals were forwarded to Greg Drudi, who was serving as the Administrative Assistant to the President of the International Union, for response. On December 16, 2013, Drudi responded with a letter, stating that the appeals were addressed by the membership at two meetings held on May 2, 2013. Drudi invoked the UAW constitutional limits for perfecting an appeal—thirty days from when the appellant first receives notice of the decision being appealed—and advised that the September appeal was untimely.

On January 16, 2014, the Plaintiffs, by counsel, appealed Drudi's decision to International Union President Bob King. The Plaintiffs asserted that they had not been made aware of the decision on their appeals until August 29, 2013, and requested that the time limits be waived so that their appeals could be decided on the merits. Alternatively, they requested that their "appeals by considered by the Public Review Board due to the International Executive Board's inaction." (Jan. 16, 2014 Letter, ECF No. 44-3.)

On January 30, 2014, King responded in writing to the Plaintiffs' counsel. King granted the Plaintiffs' request for reconsideration of the internal appeals because he found that the Local Union had not provided the Plaintiffs written notice of its resolution of their internal appeals. Nevertheless, he denied the internal appeals as untimely because they were related to events that occurred in 2011. King determined that the Plaintiffs knew or reasonably should have known about the events and actions they challenged in their internal appeals at the time of their recall in

7

August 2011, or no later than the filing of the 2011 Lawsuit, but that the internal appeals had not been filed within sixty days.

King's January 30, 2014, correspondence also advised the Plaintiffs that he was denying their request to waive the time limits of the UAW Constitution. King stated that, upon review of the relevant facts, he could not find any mitigating circumstances that warranted waiver of the time limits. King closed his correspondence by advising Plaintiffs, "I regret to inform you that this office has no further authority to act on these matters and we consider this case closed."

The Plaintiffs then filed appeals to the Convention Appeals Committee. On March 31, 2014, King responded in writing, acknowledging the Plaintiffs' request for an appeal. King stated that the issues raised in the letter were already considered by the court in the previous case. King wrote, "As I attempted to explain in my January 30, 2014 letter to you, there is no constitutional mechanism allowing you to breathe new life into these appeals." (Mar. 31, 2014 Letter, ECF No. 37-24.) King, again, advised that the UAW considered their "case closed" and added that it served "no useful purpose to continue to exchange these missives." (*Id.*)

On April 22, 2014, the Plaintiffs, by counsel, sent a letter to King, explaining that the issues raised by the appeal had not been previously considered by the Court:

> [T]he issues contained in the members' appeals regarding the unfair representation during contract negotiations were never addressed by the Union because the members were misled regarding the handling of their grievances. This misrepresentation forms the basis of their second appeal, which has also not been addressed by the Union. The Constitution gives these Members a right to pursue these matters to the Convention Appeals Committee. We ask that you process these appeals according to the procedure.

On May 23, 2014, the Plaintiffs' counsel sent a follow-up letter regarding the appeals to the Convention Appeals Committee, but received no response.

8

**D. The Current Litigation**

On September 16, 2014, the Plaintiffs filed the Complaint in this cause of action against the Defendants. Count I of the Complaint alleges that the Defendants breached the duty of fair representation owed to the Plaintiffs in connection with the negotiation of the 2011–2017 CBA.

Additionally, the Plaintiffs allege that the Defendants' representatives misled them into believing that they had exhausted the internal appeals process before they filed the 2011 Lawsuit. The Plaintiffs allege that they learned in April 2013 that the Union had not processed any internal appeals, and subsequently filed internal appeals. These appeals were processed to completion when the President of the International Union provided correspondence denying their appeals. Based on these factual allegations, the Plaintiffs claim, in Count II, that the Defendants breached the duty of fair representation by making false representations with respect to the Plaintiffs' internal appeals.

**STANDARD OF REVIEW**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to "establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted. Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary

judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## ANALYSIS

A.  **Count I**

"A union has broad authority as the exclusive bargaining agent for a class of employees." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). "To balance the power bestowed upon a union to exclusively represent all employees in employment disputes, a concomitant duty of fair representation is owed by the union to each of its members." *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009) (internal quotation marks and brackets omitted). A union breaches its duty to fairly represent a member where its conduct toward a member is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The rule announced in *Vaca* "applies to all union activity, including contract negotiation." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (stating that the union's obligation to serve the interests of all without discriminating toward any, to exercise its discretion in good faith, and to avoid arbitrary conduct "exists through the negotiation of a collective-bargaining agreement and during administration of the agreement"); *Schultz v. Owens-Illinois, Inc.*, 696 F.2d 505, 514 (7th Cir. 1982) (acknowledging that a duty of fair representation case may allege a breach in the negotiation of a collective bargaining agreement).

A complaint based upon a union's breach of the duty of fair representation is subject to a six-month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 154–55 (1983)

(adopting six month statute of limitations period from 29 U.S.C. § 160(b)); *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999); *Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1377 (7th Cir. 1984). "A cause of action accrues when the plaintiff knew, or should have known, of the defendant's wrongdoing and can successfully maintain a suit in the district court." *Allen v. United Food & Commercial Workers Int'l Union*, 43 F.3d 424, 427 (9th Cir. 1994) (distinguishing claims for breach of duty of fair representation during collective bargaining negotiations and claims for breach related to the grievance process).

It is undisputed that by August 2011 the Plaintiff were aware that the 2011–2017 CBA entitled the MV-1 Pre-Launch Group to receive wage rates and other benefits that the Plaintiffs were not receiving. Therefore, unless the statute of limitations has been tolled, their September 16, 2014, lawsuit is untimely. The 2011 Lawsuit may have provided such tolling.

The Defendants argue that, under *Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2009), the 2011 Lawsuit cannot be used to toll the statute of limitations. In *Elmore*, three plaintiffs filed suit against the Postal Service within the applicable statute of limitations period. *Id.* at 1010. After the judge dismissed Elmore from the suit without prejudice, due to misjoinder, Elmore refiled his claim as a separate suit. *Id.* at 1011. The district judge dismissed the refiled suit with prejudice because Elmore had not refiled his claim within the applicable limitations period. *Id.* Elmore argued that because his first suit was timely, his second suit should have been considered timely as a continuation of the original suit. *Id.* Alternatively, he argued that the running of the statute of limitations on the second suit was equitably tolled. *Id.* The Seventh Circuit reasoned:

> The filing of a suit stops the running of the statute of limitations, though only contingently. It is true that if the suit is later dismissed with prejudice, any issue concerning the bar of the statute of limitations to the refiling of the suit will be moot because a suit that has been dismissed with prejudice cannot be refiled; the

11

> refiling is blocked by the doctrine of *res judicata*. But if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.

*Id.* This rule—that "a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed"—was necessary to prevent the statute of limitations from being "easily nullified." *Id.* ("The plaintiff could file a suit, dismiss it voluntarily the next day, and have forever to refile it."). The court recognized the harshness of the rule: a dismissal without prejudice effectively becomes a dismissal with prejudice if the statute of limitations has run. *Id.* (noting, however, that the severity of the rule was mitigated by the doctrine of equitable tolling).

The Defendants previously attempted to dismiss the Plaintiffs' current lawsuit on *res judicata* grounds. The Court denied the Defendants' Motion to Dismiss because the first suit—the 2011 Lawsuit—did not end in a final judgment on the merits of the claim. *See Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (noting that an element of claim preclusion was a final judgment on the merits in the first suit). The Defendants argue that this Court's denial of its Motion to Dismiss on *res judicata* grounds "is tantamount to a ruling that the 2011 Lawsuit was dismissed without prejudice." (Defs.' Br. 16. ECF No. 38; *see also id.* 17 ("This Court previously concluded that this suit was not barred by the 2011 Lawsuit and the *res judicata* doctrine and it necessarily follows that the 2011 Lawsuit was dismissed without prejudice.").)

It is undisputed that, by the time the 2011 Lawsuit was dismissed, there was no time remaining on the six-month statute of limitations. *Elmore* dictates that, if that dismissal was

12

without prejudice, any tolling effect of the 2011 Lawsuit was wiped out. The Plaintiffs assert that the 2011 Lawsuit "was not dismissed without prejudice and this Court, on Defendants' motion to dismiss, decided that *res judicata* was inapplicable because there had been no decision on the merits of Plaintiffs' claims in the 2011 Lawsuit, which remains true still." (Pls.' Br. 10, ECF No. 43.) This is the extent of the Plaintiffs' argument against the application of the rule announced in *Elmore*. But nothing in the Plaintiffs' argument distinguishes *Elmore* or otherwise shows why it does not apply. The Plaintiffs think it relevant that there has been no decision on the merits of Count I. *Elmore*, too, lacked a decision on the merits. The Plaintiffs have not explained a way around the incongruity that surrounds their insistence that they have a right to re-file a lawsuit that "was not dismissed without prejudice." And while the result is harsh, as the Seventh Circuit recognized, it can be mitigated by the doctrine of equitable tolling, where applicable.

The Plaintiffs rely on equitable tolling when they argue that the Defendants should not be able to benefit from their own misrepresentations. The Plaintiffs assert that, when they filed their 2011 Lawsuit, the Union should have initiated an appeal on the Plaintiffs' behalf instead of taking advantage of its misrepresentations to argue that the Plaintiffs failed to exhaust their internal union remedies. Then, when the Plaintiffs attempted to exhaust their internal union remedies, the Defendants should have agreed to the Plaintiffs' request to stay the litigation to allow the exhaustion to occur instead of obtaining a dismissal of the litigation for failure to exhaust.

As the Plaintiffs see it:

> Plaintiffs, meanwhile, attempted to comply with the UAW Constitution appeal procedure by filing their appeals. Defendants, through their responses, refused to provide the UAW procedures to Plaintiffs and refused to consider their appeals. Following the final response from the Defendants on March 31, 2014 on both

13

> Claim I and Claim II of their Complaint, the Plaintiffs again timely filed the
> current lawsuit, but now, the Defendants argue that the Plaintiffs' filing is
> untimely. Allowing summary judgment, and determining that the Plaintiffs
> untimely filed their current lawsuit, would reward the Union for its previous
> misrepresentations entirely and would in effect insulate them from liability. These
> circumstances justify suspending the ordinary operation of the statute of
> limitations as a matter of law. The Court should find that Plaintiff's Count I
> claims were timely filed.

(Resp. 12, ECF No. 43.)

The Seventh Circuit has stated that "'[t]he statute of limitations does not always begin to run at the first moment where a wrongful invasion of a protected interest might give rise to a cause of action.'" *Lewis*, 750 F.2d at 1379 (quoting *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971)). Rather, a court may "suspend the operation of the statute" when specific circumstances warrant it. *Id.* Such circumstances include "fraudulent concealment of facts by the defendant, the continuation of a special relationship between the plaintiff and defendant which offers the possibility of correction of the injury, or continuing wrongful conduct of the defendant toward the claimant which establishes a status quo of continuing injury." *Id.* For example, in *Lewis*, the Seventh Circuit decided that the plaintiff had alleged a continuing violation because his union had repeatedly refused to refer him for job assignments. The court distinguished Lewis's situation from a "particular instance in which, for example, the Union failed to process a grievance concerning a discharge or promotion." *Id.* Additional important considerations include the policies behind a particular statute of limitations, as well as the nature of the wrongful conduct and harm being alleged. *Id.*

In *DelCostello*, the Supreme Court stated that the six-month period for breach of the duty of fair representation was appropriate because it provided for the rapid resolution of labor disputes and, at the same time, afforded plaintiffs ample time in which to vindicate their rights.

462 U.S. at 169–70. It is against this "strong national interest in expediting the resolution of labor disputes," *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 916 (7th Cir. 1999), that the Court finds that the circumstances of this case do not warrant suspending the operation of the statute of limitations. The Plaintiffs contend that it was through no fault of their own that they did not exhaust administrative remedies before filing the 2011 Lawsuit. But that argument runs contrary to what the district court decided in dismissing the 2011 Lawsuit. If the Plaintiffs wanted a ruling that they were excused from exhausting administrative remedies, their course of action was to appeal the court's summary judgment ruling in favor of the Defendants. *See, e.g.*, *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 972 (7th Cir. 2011) (noting that a litigant who was facing the harsh result of *Elmore* brought about by an improper dismissal "should have appealed immediately" instead of attempting to refile). This Court is precluded from reconsidering what was already decided in the 2011 Lawsuit—that exhaustion of administrative remedies was a necessary prerequisite to filing suit that was not excused or otherwise met at the time of the original suit. In addition, the Union has since found that the administrative appeals were untimely, and that there were no mitigating circumstances that warranted waiver of the time limits. Because the procedural error has become irremediable, no longer is it accurate to say that judicial action has simply been stalled to correct that procedural error. To find that this case states sufficient grounds for suspension of the running of the statute of limitations would contravene the principles that favor expeditious resolution of labor disputes, *id.*, and the principles that require union members to be aware of the nature and availability of union remedies, *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927–28 (7th Cir. 1974), *overruled on other grounds by Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 690 n.3 (7th Cir. 1982).

Additionally, the Plaintiffs' claim does not involve a continuing violation, such as was present in *Lewis*. The Plaintiffs are challenging a single, discrete act—the negotiation of the CBA in 2011.

Count I is barred by the statute of limitations.

**B.	Count II**

When an employee's fair representation claim against a union arises from the union's conduct in a grievance or arbitration procedure, the operative date for determining when the statute of limitations begins to run is the date on which a final decision on a plaintiff's grievance has been made or the time that the plaintiff discovers or should have discovered with the exercise of reasonable diligence that he had a potential claim against the union because no further action with respect to the potential grievance has been taken. *See Metz v. Tootsie Roll Indus.*, 715 F.2d 299, 304 (7th Cir. 1983); *see also Richard v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986). The statute of limitations is tolled by the pursuit of internal union remedies. *Frandsen v. Bhd. of Ry., Airline & Steamship. Clerks, Freight Handlers, Express & Station Emps.*, 782 F.2d 674, 681 (7th Cir. 1986). The policy behind this rule is to allow plaintiffs to exhaust internal union remedies without fear that later suits against the union for breach of the duty of fair representation will be time barred. *Id.* This tolling occurs even if the intra-union appeal has not been timely filed pursuant to the union's appeals procedure. *Stevens v. Nw. Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 729–30 (7th Cir. 1994). "Once, however, a union responds to an appeal in a clear manner, continuing requests are not sufficient to toll the statute." *Id.* at 730. Additionally, "[p]rolonged inaction [by the union] is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation."

*Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 327 (7th Cir. 1992).

According to the Defendants, the Count II claims began to accrue when they filed their Answer to the 2011 Lawsuit on February 23, 2012. The Plaintiffs counter that the Defendants' Answer to the allegation that the Defendant had informed the Plaintiffs that they had exhausted the grievance procedure process was a simple denial, without further explanation. And although the Defendants included a boilerplate affirmative defense that the Plaintiffs had failed to exhaust internal union remedies, it was not accompanied by any further information. It was only when the Defendants filed their Motion for Summary Judgment in February 2013, that the Plaintiffs realized that the Defendants had made misrepresentations regarding the status of their appeals. The Plaintiffs then filed appeals in April 2013 to complain that the Union had misrepresented the status of appeals.

Taking the facts most favorable to the Plaintiffs, the latest date the Count II fair representation claims began to accrue was February 1, 2013, when the Defendants filed their summary judgment motion in the 2011 Lawsuit. And although the statute of limitations is tolled during the pursuit of internal union remedies, the Plaintiffs did not file internal appeals until April 8, 9, and 11, 2013. Thus, 66 days elapsed before tolling began. The last correspondence the Plaintiffs received from the Union was the March 31, 2014, letter from UAW President King. Even if the Plaintiffs did not receive immediate notice of the correspondence advising that the UAW would not process the appeal to the CAC, the latest they received the notice was April 22, 2014, the date their counsel wrote to King in response to the March 31 letter. They did not file suit until 147 days later, on September 16, 2014. Adding these 147 days to the 66 days that

previously elapsed brings the total elapsed time to more than six months.[1]

Accordingly, Count II is also time-barred.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion for Summary Judgment [ECF No. 36]. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiffs.

SO ORDERED on May 26, 2016.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT
                                          FORT WAYNE DIVISION

---

[1] Plaintiff Scruggs did not file a formal UAW Constitution appeal until September 24, 2013.